UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY KILROY, Individually and on behalf of KOK, KBK, EAK, KEG, <br><br> Plaintiffs, <br><br> v. <br><br> MAINE, STATE OF, et al., <br><br> Defendants | ) ) ) ) ) ) ) Civil No. 9-324-B-W ) ) ) ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Timothy Kilroy is proceeding, pro se, in this civil action against the State of Maine, Brenda Harvey, the Commissioner of the Maine Department of Health and Human Services (DHHS), and Janet Mills, the Attorney General of the State of Maine. He also purports to bring this action on behalf of his four children "and all others similarly situated." Kilroy has been involved in civil protection from abuse, divorce, and child custody proceedings. Kilroy is a quadriplegic. His claims in this court are self-characterized as being under Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Medicaid Act. He also cites various provisions of the United States Constitution. He relies heavily on Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999). He believes that he will be forced out of his house -- a community-based placement -- and forced into institutional care as a consequence of the court and administrative orders pertaining to his divorce, child support obligations, social security benefits, and his share of medical care costs which the state refuses to modify. Kilroy receives 86 hours of attendant care under the Home and Community Based Services (HCBS) waiver program. Kilroy states that his foreclosure proceeding was scheduled for November 2009[1] and

---

[1] (Resp. Mot. Dismiss at 46.)

maintains that he is being forced into bankruptcy, although according to the Maine Bankruptcy Court's electronic filing system he has not filed for bankruptcy as of today's date.

The defendants have filed a motion to dismiss, which in part argues that Kilroy fails to state a claim.  Because of the relevancy of the state court orders to Kilroy's claims, the defendants also invoke the Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) doctrine.  For the reasons set forth below, based on Federal Rule of Civil Procedure 12(b)(6) and Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937 (2009), I recommend that the Court grant the motion to dismiss as to the individual capacity claims against Mills and Harvey, the official capacity claims against Mills and Harvey, and the claim against the State of Maine, which is really a claim against DHHS.

## *Discussion*

### *Three Preliminaries*

First, Kilroy cannot bring an action on behalf of his four children, see Crippa v. Johnston, 976 F.2d 724, 1992 WL 245716, 1 (1st Cir. Oct. 1, 1992)(unpublished, per curiam);  see  also Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) ("However, we agree with Meeker v. Kercher, 782 F.2d 153, 154 (10th Cir.1986) (per curiam), that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child. The choice to appear pro se is not a true choice for minors who under state law, see Fed.R.Civ.P. 17(b), cannot determine their own legal actions. There is thus no individual choice to proceed pro se for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others."); accord Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882 -83 (3d Cir. 1991); compare Winkelman ex rel. Winkelman v. Parma City School Dist., 550 U.S. 516, 535 (2007) ("Parents enjoy rights under IDEA; and

they are, as a result, entitled to prosecute IDEA claims on their own behalf."); Maroni v. Pemi-Baker Regional School Dist., 346 F.3d 247, 250 (1st Cir. 2003) ("[W]e conclude that parents are "parties aggrieved" within the meaning of IDEA, 20 U.S.C. § 1415(i)(2)(A), and thus may sue pro se."), and "and all others similarly situated" because he is not licensed to practice law, see 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1769.1, at 450 & n. 13 (3d ed. 2005) (class representatives cannot appear pro se). All claims that Kilroy purports to bring on behalf of his children and others must be dismissed without prejudice.[2]

Second, Kilroy has not named a single member of the State of Maine judicial branch as a defendant and, accordingly, there are no members of the Maine judiciary that are a party to this dispute. The fact that the defendants have observed that judicial officers involved in Kilroy's case are entitled to absolute immunity does not change the contours of Kilroy's suit. Accordingly, I disregard the argument of both sides vis-à-vis the spectral judicial defendants; these individuals are simply not parties to this litigation. Kilroy maybe pro se but he has put together a comprehensible complaint and has expressly named his defendants as the State of Maine, Commissioner Harvey, and Attorney General Mills. (Compl. ¶¶ 11, 12, 13, 14, 15.)[3]

Third, as mentioned above, the State does argue that the Rooker/Feldman doctrine dictates that this Court lacks subject matter jurisdiction over this suit because Kilroy is

---

[2]  For instance, Kilroy claims that DHHS and the Family Courts forced his child to receive physical abuse counseling. (Compl. ¶ 27.)

[3]  I recognize that Kilroy's response to the motion to dismiss contains many allegations and accusations about court proceedings. For instance he "needs reasonable modifications and accommodations in the administration of justice" (Resp. Mot. Dismiss at 13); he objects to the fact that court allowed of his ex-wife to introduce evidence of domestic abuse in the family court proceedings (id.); he seeks redress for the non-recusal of Judge Mead – because his wife worked in the Brewer Public School and so does Kilroy's ex-wife (id. at 20-21); similarly he complains that Judge Jordan has family members indirectly involved in the proceedings (id. at 22-25); and Judge Murray retaliated for complaining about the lack of Penobscot County Court House Courtroom 3 accessibility (id. at 26). Kilroy states: "It is the Defendant's conduct in numerous hearings that is being constitutionally challenged not the orders themselves." (Id. at 27.)

3

essentially seeking to have this court overturn state court orders which are final. (Mot. Dismiss at 9-10.) Ordinarily this would be a serious concern. See Miller v. Nichols 586 F.3d 53, 58 -59 (1st Cir. 2009). However, Kilroy clearly professes that he is not trying to challenge these orders, explaining:

> The testimony and documents of both divorces as well as any other hearing at the courthouse or DHHS is relevant only to the extent that it provides the context and background in which the facts concerning intentional discrimination, discriminatory animus, irrational prejudice, retaliation, exclusion, 8th and 14th amendment rights, ADA, 504, and Title XIX violations are presented.

(Resp. Mot. Dismiss at 3.) Such a disclaimer might not work in all cases to hurdle the Rooker/Feldman bar, but it is fair to proceed with an analysis of Kilroy's claims with this disclaimer setting the parameters and keeping in mind that any relief that Kilroy might be entitled to would be so limited.[4]

### *Federal Rule of Civil Procedure 12(b)(6) Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." To decide a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). See also

---

[4] One reason I choose to follow this course is that, even if I were to accept the defendants' argument, it would apply only to the court orders and not the DHHS determinations, which are not final state court judgments.

Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Additionally, because Kilroy is a pro se litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). As a pro se litigant, his pleadings also may be interpreted in light of supplemental submissions, such as his response to the motion to dismiss. Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir.2002); Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). However, this does not make Kilroy's claims against the named defendants a moving target; the four corners of the complaint still dictate the cause of actions and the identification of the defendants.[5]

---

[5] Attached to Kilroy's complaint is a compact disk of a February 18, 2009, DHHS hearing. The defendants have invited the court to consider 'additional facts' – to take judicial notice of court orders and administrative hearing decisions. (Mot. Dismiss at 6, Doc. No. 10; id. Attachs. 1-9.) In responding to the motion to dismiss, Kilroy sets forth pages and pages of additional facts in his memorandum and has filed a sheath of papers and multiple compact discs. (Doc. No. 13, Attachs. 1-39.)
The defendants rely on Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007) (observing that if "well-pleaded factual averments " "are illuminated, supplemented, or even contradicted by other materials in the district court record," the court "need not confine [its] jurisdictional inquiry to the pleadings, but may consider those other materials."); see cf. id. at 8 n.1, which addressed a subject matter jurisdiction motion to dismiss. In Trans-Spec Truck Service, Inc. the First Circuit addressed a Rule 12(b)(6) record:
> Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment. Garita Hotel [Ltd. V. Ponce Fed. Bank] , 958 F.2d [15,] 18 [(1st Cir. 1992)]. Exhibits attached to the complaint are properly considered part of the pleading "for all purposes," including Rule 12(b)(6). Fed.R.Civ.P. 10(c); Blackstone Realty [LLC. V, FDIC], 244 F.3d [193,] 195 n. 1 [(1st Cir. 2001)]. Additionally, we have noted that "[w]hen ... a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir.1998); see also Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir.2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court " 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint' " (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996)).

524 F.3d at 321.
Kilroy does reference certain judgments of the state courts and administrative orders in his complaint but not in the sense contemplated by the Trans-Spec Truck Service, Inc. Panel. As I note in this recommended decision in the discussion of the defendants' Rooker/Feldman argument, Kilroy insists that he is not challenging the validity of the final state-court orders. In basing my recommended decision on Rule 12(b)(6) grounds, I have not relied on the extra attachments filed by both sides.

The defendants have bent over backwards to parse the contents of Kilroy's complaint. Kilroy's response to the motion to dismiss does not simplify the process of ruling on the motion to dismiss; it is a lengthy narrative of his proceedings in state court and interactions with DHHS -- much of which is unrelated to his legal claims -- peppered with references to his statutory and constitutional rights.  With respect to his complaint, it is a pleading punctuated by allegations such as the following.[6] Kilroy views DHHS's calculation of child support and the orders of the Family Court as, "[f]orcing the sale of [his] home, ordering excessive fines and placing [him] in jail or a nursing facility is a form of total restraint without justification." (Compl. ¶ 26.)  "The State of Maine's lack of action and any legitimate assistance may only be described as a 'Disability Rights Lynching.' " (Id. ¶ 27.)  "The Maine Family Court and DHHS garnishes the children's social security benefits up to ($10,128) violating the integration mandate and my Parental Rights.  The State garnishes my social security up to ($7,280 + $5,352 +$12,632) child support and medical care obligations.  This amount has placed me in bankruptcy, my home in foreclosure and I received a 15 day jail sentence[] by the Family Court for failure to pay this obligation." (Id. ¶ 55.)

*Defendants Mill's and Harvey's Individual Capacity Liability*

In his extensive responsive memorandum, the closest that Kilroy comes to describing his theory of liability apropos Attorney General Mills is as follows:

> Ms. Mills directs and supervises the child protective division, child support enforcement division, health and human services division, financial crimes & civil rights division and investigation division. Ms. Mills and her officials are responsible to ensure that the citizens in Maine are afforded the rights

---

[6] Kilroy mentions the inaccessibility of Courtroom 3 at the Penobscot County Court House, and his troubles getting into the hearings.  There is no dispute that he settled his claim relating to an injury sustained during one such attempt. (See Doc. No. 10-8.)  Purely looking at the allegations of his complaint, there is no allegation that he missed any hearing as a consequence of the inadequate accessibility.

> guaranteed to them by the United States Constitution, and the Constitution and laws of Maine including the ADA, Section 504, and Social Security.

(Resp. Mot. Dismiss at 39; see also id. at 54.) He insists that if the Attorney General had investigated his complaints from 2002 through 2008, the erroneous child support and cost of care would have been resolved well before 2009. (Id. at 43.)

With regards to both Mills and Commissioner Harvey, Kilroy describes the various divisions referenced above and states:

> It would appear that the Attorney General and Commissioner, DHHS have sufficient and knowledgeable staff to investigate issues concerning healthcare fraud, medical mal-practice, Social Security fraud, child abuse, child support, adult abuse, neglect and exploitation, bank fraud, mortgage fraud, perjury, ADA, 504, Title XIX, integration mandate and Olmstead complaints from Maine Citizens….
> It was the plaintiff's understanding that the Maine Attorney General and DHHS Commissioner were to provide technical assistance to disabled individuals who qualified for federal and state programs. At least an explanation of the legal compliance requirements (Olmstead Plan) and benefits of participating in the program was warranted. Plaintiff to this day has never received a response or had a representative attend any court or DHHS hearing.

(Id. at 41-42.) Kilroy states that he attempted to get forms from the DHHS office in Bangor, Maine and was rebuffed (id. at 42), but there is no allegation that Harvey was affirmatively linked to this rebuff. He does name three DHHS employees that he interacted with and whom he claims did not adequately investigate his claims of discrimination (id. at 42-43) but they are not defendants to this suit.

The Supreme Court's decision in Iqbal seems to have constricted the airways of supervisory liability law making it much harder for a plaintiff with such a claim to survive a motion to dismiss. See Iqbal, 129 S.Ct. at 1948. In the First Circuit before and after Iqbal, the plaintiff must plead facts sufficient to suggest that there was an affirmative link between the supervisor's conduct and the alleged constitutional violation. See Sanchez v. Pereira-Castillo, __

7

F.3d. __, __-__, 2009 WL 4936397, 12 -13 (1st Cir. Dec. 23, 2009; Maldonado v. Fontanes, 568 F.3d 263, 274 -75 & n.7 (1st Cir. 2009); Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005); Choate v. Merrill, 08-49-B-W, 2009 WL 3487768, 2 -4 (D. Me. Oct. 20, 2009) (pending recommended decision). Kilroy's individual capacity claims against Mills and Harvey are based on a quintessentially *respondeat superior* theory of liability and the Iqbal majority insisted: "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* …Because vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S. Ct. at 1948.

*Official Capacity Claims and the State of Maine's Liability; The Claims against DHHS*[7]

With respect to the remaining claims against DHHS, Kilroy's complaint sets forth three distinct counts: Count I, Title II of the ADA, Count II, Section 504 of the Rehabilitation Act, and Count III, Title XIX of the Social Security Act.

*Title II of the ADA and Section 504 of the Rehabilitation Act*

As the First Circuit explained in Toledo v. Sanchez:

> To state a claim for a violation of Title II, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir.2000); 2 U.S.C. § 12132. Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden. Parker, 225 F.3d at 5 (citing 28 C.F.R. § 35.150).

---

[7] The defendants assert that Kilroy's claims against Commissioner Harvey should be construed as a claim against DHHS. (Mot. Dismiss at 13.) I refer to DHHS as the defendant from here on out. With respect to the potential of official capacity liability of Attorney General Mills it is hard to fathom how Kilroy could connect those dots if he intends Mill's liability to be distinct from DHHS's.

454 F.3d 24, 31 -32 (1st Cir. 2006). Kilroy accurately states that "the court should treat the claims under Section 504 as identical to the ADA claims." (Resp. Mot. Dismiss at 45.) See Theriault v. Flynn, 162 F.3d 46, 48 n. 3 (1st Cir.1998) ("Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and is to be interpreted consistently with that provision").[8]

"Paraplegia qualifies as a disability within the meaning of the ADA." Iverson v. City Of Boston, 452 F.3d 94, 96 (1st Cir. 2006).[9] With respect to the other two prongs, Kilroy argues: "[T]he ADA prohibits public entities from utilizing 'criteria or methods of administration' that

---

[8] The defendants argue that Kilroy cannot seek money damages under the ADA because he has not sufficiently alleged a constitutional violation as required by United States v. Georgia, 546 U.S. 151 (2006). Kilroy cites the Eighth Amendment cruel and unusual punishment clause and articulates a Fourteenth Amendment right to protect his relationship to his children. With respect to the former of these rights I could locate no authority that would extend that clause to non-incarcerated citizens subject to protection from abuse proceedings, divorce decrees, child support obligations, and/or civil contempt orders. Nor could I find any support for the notion that the Eighth Amendment is implicated by a prospect of foreclosure or bankruptcy. As for the fundamental right of parents to make childbearing decisions, Kilroy cites both the state court protection from abuse proceedings and the threat of foreclosure and institutionalization that would separate him from his children. (Resp. Most. Dismiss. at 10-11, 15; Compl. ¶¶ 28, 43, 54-55, 65.) I have already indicated that I am not considering Kilroy's claims as they pertain to state court judges or the Family Court. With respect to the pendency of foreclosure and institutionalization, I have articulated in this decision my belief that these non-realized harms are too ephemeral to make them legally actionable.

I do not think that either side benefits from a complete discussion of this issue at this juncture. First, the brunt of the relief that Kilroy seeks is not for monetary damages. (Compl. at 15-16.) Kilroy does request what could be characterized as retrospective injunctive relief apropos past child support and medical expenses, and such a request does implicate the sovereign immunity inquiry. Second, Kilroy has also brought a parallel claim under the Rehabilitation Act which contains an express waiver of sovereign immunity. See 29 U.S.C.A. § 794(a) (" No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). The motion to dismiss does not attempt to argue that DHHS would not be subject to suit under this provision irrespective of the Eleventh Amendment. Should the Court conclude that the Judicial Branch could somehow be a party to this suit, the question of sovereign immunity under the Rehabilitation Act would require a much more nuanced exploration vis-à-vis that State entity. See Sharer v. Oregon, 581 F.3d 1176 (9th Cir. 2009).

In approaching the issue in this manner I am not suggesting that the State has waived its sovereign immunity should the Court disagree with my Rule 12(b)(6) analysis. The defendants have indicated that they are amenable to having their motion addressed through the failure to state a claim prism and I think this is a preferable approach, all things considered.

[9] In their reply memorandum the defendants state that Kilroy "erroneously assert[s] that the Defendants have conceded that Mr. Kilroy is a qualified individual with a disability for purposes of the ADA and Rehab Act claims." (Reply Mem. at 3.) "Although Mr. Kilroy is *medically* qualified to receive services from the Department of Human Services under its Medicaid programs," they explain, "the remaining issue is Mr. Kilroy's *financial* eligibility." (Id.) Clearly, if the resolution of this dispute turned on the question of the particular financial eligibility of Kilroy, it would be best left to a summary judgment adjudication.

have the effect of subjecting qualified individuals with disabilities to discrimination, which includes unnecessary institutionalization. 28 C.F.R. § 35.130(b)(3). Section 504 has an identical mandate. 45 C.F.R. § 84.4(b)(4); 28 C.F.R. § 41.51(b)(3). … Due to the criteria and methods of the state in calculating child support and medical care cost placed the plaintiff at severe risk of institutionalization by leaving plaintiff to manage his mortgage and household expenses with only $412.03. The State now garnishes almost 72% of the Social Security Disability Income making it impossible to function in the community and avoid institutions." (Id. at 31 -32.) "Obviously," he asserts, "not one family court judge, attorney general official, or DHHS official utilized the appropriated statutes and figures to calculate the correct child support obligations. Plaintiff for years requested reasonable modifications and accommodation under ADA and 504. …Nevertheless, plaintiff's request for accommodations and assistance were denied. Not only denied but met with retaliation and punishment for requesting relief and filing complaints under the ADA and 504." (Id. at 32.)[10]

>  The brunt of the defendants' Rule 12(b)(6) argument is as follows:
>
>  The state is not required to ensure that Kilroy lives in whatever community setting he desires to live in. Clearly Kilroy would prefer to remain in his home. It defies logic to leap to the conclusion that if he loses that home he will become institutionalized. It is far more likely that he will reside in another community setting and will continue to receive home services through the DHHS waiver program.
>  More importantly, Kilroy is unable to demonstrate causation when it comes to the likely loss of his home. The sale of his home is part of a division of

---

[10] He opines:
> Certainly, plaintiff has over the years from 2002-2009, as evident in "plaintiffs response to defendants motion to dismiss" has alerted the public entities (Attorney General's Office, DHHS Office and State Court) to the need for accommodation. Moreover, plaintiff alerted the appropriate state officials to his need for accommodation. Clearly, satisfying the "first element" of the deliberate indifference test. Especially, when the need to accommodate is obvious. The states own experts declared that plaintiff is a totally and permanently disabled Quadriplegic requiring 86 hours per week of attendant care to perform activities of daily living and avoid institutionalization. Verifying that defendants had knowledge that a harm to a federally protected right was substantially likely.

(Resp. Mot. Dismiss at 53.)

>marital property in a court proceeding. It has nothing to do with the actions of DHHS, any issue related to child support, or any potential foreclosure or bankruptcy. …
>
>>To the extent Kilroy is complaining about the criteria DHHS uses to determine what amount of money he is required to contribute to his care, he has not alleged facts sufficient to demonstrate a violation. In cases decided under Title II of the ADA, courts have held that the ADA does not "establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate only that the services provided… to non-handicapped individuals not be denied to a disabled person because he is handicapped." Doe v. Pfrommer, 148 F3d 723 (2nd Cir. 1998)[11]; Harzano v. Department of Rehabilitative Services, 2005 U.S. Dist. LEXIS 27302 ¶ 9-10 (W.D.Va.); Trout v. Astrue, 2007 U.S. Dist. LEXIS 85622 (S.D. Ind.), ¶ 8 (denial of social security disability benefits on the grounds of time limits did not violate ADA). Here the complainant cannot show that he has been treated differently because of his disability or that his particular disability is being treated in a discriminatory fashion. Instead, he is obliquely complaining about the state regulations adopted by DHHS which contain the criteria used by DHHS to determine whether a person is financially qualified to receive services, and what that individual's share of the cost of those services should be. His disability discrimination claim fails to state a claim upon which relief can be granted, and should therefore be dismissed.

(Mot. Dismiss at 18-20.)

Briefly, with regards to the second prong of my analysis, Kilroy has failed to close the circle with respect to how DHHS's action deprived him of a public service, program, or activity. See Iverson v. City of Boston, 452 F.3d 94, 103 (1st Cir. 2006).   As for the case law, Kilroy's most persistent refrain throughout his complaint and response to the motion to dismiss is Olmstead which recognized, in the context of claims of plaintiffs on Medicaid, "that unjustified institutional isolation of persons with disabilities is a form of discrimination." 527 U.S. at 600; see also id. at 597.  With respect to the obvious fact that the threat of institutionalization is unconsummated, Kilroy cites Fisher v. Oklahoma Health Care Authority, in which the Tenth Circuit Panel observed:

>By their own admission, the state argues, the plaintiffs do not face the segregation and isolation from the community that constitutes discrimination under the ADA.

---

[11] But see Buchanan v. Maine, 469 F.3d 158, 175 n.10 (1st Cir. 2006).

> We note, however, that given the plaintiffs' precarious health and finances, the five-prescription cap places them at "high risk for premature entry into a nursing home." That they have emphatically stated their desire to remain in the community does not mean that they do not face a substantial risk of harm.

335 F.3d 1175, 1184 (10th Cir. 2003) (record citation omitted).

Kilroy also relies heavily on the Maine Supreme Court's <u>Suzman v. Comm'r, Dept. of Health and Human Servs.</u>, which rejected a DHHS determination reducing the plaintiff's number of hours of personal care attendant (PCA) services. The Court explained:

> DHHS argues that Suzman's ADA claim is not viable because he has not alleged or shown that he will be institutionalized if he is not afforded all of the PCA hours that the Commissioner has determined he needs. This contention lacks merit. As a person eligible for the waiver program, Suzman *by definition* is in need of institutionalization. 42 U.S.C.A. § 1396n(c)(1) (providing that the secretary may issue waivers permitting a state to offer home and community-based services only to individuals who need them in order to avoid institutionalization); <u>see</u> <u>also</u> <u>Fisher v. Okla. Health Care Auth.</u>, 335 F.3d 1175, 1181-82 (10th Cir.2003) (concluding that <u>Olmstead</u> does not require that a claimant be currently institutionalized in order to enforce the integration requirement). By determining his need level at seventy-four hours, the Commissioner found that seventy-four is the number of PCA daytime hours that allows Suzman to function outside of an institution.

2005 ME 80, ¶ 31, 876 A.2d 29, 38.

I believe the key reason that DHHS is entitled to dismissal of this claim on Rule 12(b)(6) grounds is that any actions it has taken that have impacted Kilroy's child support obligations and social security benefits is not a modification of Kilroy's HCBS waiver program, unlike the circumstances in <u>Suzman</u> and <u>Fisher</u> which included a direct link to the services provided. Nor is Kilroy seeking a modification of his program – the 86 hours of in-home care – which the State has provided. This dynamic distinguishes his case from <u>Olmstead</u>.[12] Per his own complaint allegations, Kilroy qualifies for HCBS services and receives 86 hours of home attendant care a week as a consequence of HCBS addressing his activities of daily living such as feeding,

---

[12] Compare also <u>Buchanan v. Maine</u>, 469 F.3d 158, 176 (1st Cir. 2006); <u>Toledo v. Sanchez</u>, 454 F.3d 24, 32 (1st Cir. 2006).

cooking, bathing, dressing, mobility, hygiene, transportation and medical care. Assuming that Kilroy's divorce orders, child custody obligations, and social security determinations are related to his disability, he is in essence asking that DHHS be required to undertake "'affirmative efforts to overcome the disabilities caused by handicaps.'" Miller, 586 F.3d at 61 n. 3 (quoting Se. Cmty. Coll. v. Davis, 442 U.S. 397, 410 (1979)).[13]

*Medicaid Act Claim*

Finally, as for his Title XIX claim, Kilroy's theory is that as an eligible recipient of Medicaid he qualifies for HCBS waiver and "DHHS and the Maine Courts have failed to provide HCBS waiver services with reasonable promptness and cost." (Compl. ¶62.) He insists that forcing him out of his home violates his Title XIX and parental rights. (Id. ¶ 63.)[14]

Under this act, Maine's plan for medical assistance must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C.A. § 1396a(a)(8). The First Circuit has held that "there is a § 1983 cause of action arising from the 'reasonable promptness' provision of 42 U.S.C. § 1396a(a)(8) under the state model waiver plan as approved." Bryson v. Shumway, 308 F.3d 79, 89 (1st Cir. 2002).

---

[13] The Olmstead majority indicated: "We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.' Cf. *post,* at 2198 (THOMAS, J., dissenting). We do hold, however, that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." 527 U.S. at 603.
  As for the third factor, beyond his conclusory claim of retaliation for his complaints about the DHHS determinations, Kilroy has not alleged plausible facts "that these decisions were irrational and not motivated by any conceivable legitimate reason"; "he has failed to allege that" DHHS's "failure to accommodate his situation was due to irrational prejudice and, indeed, rational bases for the actions are apparent from the face of the complaint." Toledo v. Sanchez, 454 F.3d 24, 33 -34 (1st Cir. 2006).

[14] In setting forth this claim he also asserts a right to counsel. (Id. ¶¶ 66, 68.) On August 21, 2009, I entered an order that indicated as relevant: "[T]here is no constitutional right to an attorney in a civil proceeding and currently no extraordinary circumstances to justify appointment, although plaintiff could seek representation through Pine Tree Legal Services if eligible[.]" (Doc. No. 8.)

Based on the above discussion of the fact that Kilroy has not alleged any curtailment of HCBS waiver services, I agree with the defendants that his allegation of a failure to provide prompt services is frivolous per his own complaint. As for the "reasonable cost" theory, beyond setting forth the amounts he is required to contribute, Kilroy has not presented the court with any basis to conclude that such a cost complaint could support a Title XIX claim.[15] I further note that in his 58-page response brief Kilroy does not defend his Title XIX count and, thus, he has waived objection to the defendant's arguments as to why it does not state a claim.

*Conclusion*

For these reasons I recommend that Kilroy's complaint be dismissed with prejudice for failure to state a claim.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 8, 2010.

---

[15] Kilroy also cites to 42 U.S.C.§ 1396a(a)(30) in his complaint. The First Circuit has held: "Providers such as pharmacies do not have a private right of action under subsection (30)(A); if they think that state reimbursement is inadequate-and cannot persuade the Secretary to act-they must vote with their feet." Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50, 59 (1st Cir. 2004). Following this case, the Sixth Circuit has concluded that this subsection "does not … provide Medicaid recipients or providers with a right enforceable under § 1983." Westside Mothers v. Olszewski, 454 F.3d 532, 542 (6th Cir. 2006). I also do not read this provision as applicable to the nature of Kilroy's 'cost' complaint.